**UNITED STATES of America,**
**Appellee,**

v.

**Heriberto FLORES, Defendant–**
**Appellant.**

**Docket No. 04–0828.**

United States Court of Appeals,
Second Circuit.

Sept. 17, 2004.

Jacob W. Buchdahl, Assistant United States Attorney, for David N. Kelley, United States Attorney for the Southern District of New York (Laura Grossfield Birger, on the brief), for Appellee.

Vincent L. Briccetti, Briccetti, Calhoun & Lawrence, White Plains, NY, for Appellant.

PRESENT: CALABRESI, SACK, and RAGGI, Circuit Judges.

## SUMMARY ORDER

On November 14, 2002, Heriberto Flores found a man known as "Dante" at the front door of his house ("11 Soulard Street"). Flores rented a room at 11 Soulard Street from Jose Alaya, the owner of the home. Dante sought permission from Flores to leave a car in Alaya's garage. Flores told Dante to wait for Alaya to come home. When Alaya returned several hours later, he greeted Dante warmly; the pair made plans to leave for dinner, and Flores accepted an invitation to join them.

On the way to dinner, Dante directed the group to a local hotel, where they encountered Raphael Ortiz. After a brief conversation between Dante and Ortiz, Flores was asked to ride back to 11 Soulard Street with Ortiz. Dante offered to pay Flores for his help if he would give Ortiz directions back to the house, and then help "take apart" Ortiz's S.U.V. and "take out some things." Flores agreed, though he believed that he was potentially being asked to help Dante and Ortiz bring drugs to 11 Soulard Street. And his suspicions were correct; once Ortiz placed his car in the garage, he told Flores that a great deal of cocaine (27 kilograms) was hidden in a "trap" underneath the car's rear floor panels. He asked Flores to locate tools and help him remove the cocaine from the trap. Flores agreed to help, and after opening the vehicle trap and unloading the 27 kilograms of cocaine with Ortiz, he brought the drugs into the basement of 11 Soulard Street. The next morning, Dante gave Flores $1000 and instructed him to wire $900 to an unknown party. Immediately after Flores made that wire transfer, he was arrested.

Flores pled guilty to conspiracy to distribute, and to possess with intent to distribute, 27 kilograms of cocaine, in violation of 18 U.S.C. §§ 812, 841, 846, as well as possession with intent to distribute 27 kilograms of cocaine, in violation of 18 U.S.C. §§ 841, 846. At sentencing, the district court (McMahon, *J.*) determined that Flores qualified for a safety valve reduction under USSG § 5C1.2, but not a minor role adjustment under USSG

§ 3B1.2(b). Before reaching that conclusion, the district court made the following findings:

> I do not believe that "minor participant" status is warranted for Mr. Flores. He was a lesser participant, I will grant you, than others who were involved in this particular scheme. But he was a little something more than a mule.... Within the context of the offense charged—the offense charged took place on November 14th and 15th of 2002—I find that that was significant enough so as not to warrant "minor participant" treatment....

Accordingly, the district court sentenced Flores, without the 2–point minor role reduction, to 87 months' imprisonment.

Flores now challenges the denial of a mitigating role adjustment. He claims that the district court's reference to him as a "lesser participant" constituted a factual conclusion that his role was minor as compared to the roles of other participants in the charged enterprise, and that he was therefore entitled to a mitigating role adjustment because his culpability was less than that of the "average" member of a drug conspiracy.

We review the district court's factual findings for clear error, *see United States v. Castano,* 234 F.3d 111, 113 (2d Cir.2000), its interpretation of the Sentencing Guidelines *de novo, see United States v. Gaston,* 68 F.3d 1466, 1468 (2d Cir.1995) (per curiam), and its application of the Guidelines to the facts for abuse of discretion, *see United States v. Ravelo,* 370 F.3d 266, 269–70 (2d Cir.2004).

Under the Guidelines, a defendant may receive a 2–point sentencing reduction upon demonstrating, by a preponderance of the evidence, that he or she is (1) less culpable than other members of the charged enterprise, and (2) "substantially less culpable" than the average participant in such a crime. USSG § 3B1.2, note 3.

*See United States v. Rahman,* 189 F.3d 88, 159 (2d Cir.1999) (per curiam). Factors relevant to this determination include the appellant's culpability relative to the elements of the offense of conviction, *see Castano,* 234 F.3d at 113, the nature of the defendant's relationship to other participants, *see Ravelo,* 370 F.3d at 270, and the importance of the defendant's actions to the success of the venture, *see United States v. Yu,* 285 F.3d 192, 200 (2d Cir. 2002). The defendant bears the burden of demonstrating, by a preponderance of the evidence, that he is entitled to a minor role adjustment. *See United States v. Brunshtein,* 344 F.3d 91, 102 (2d Cir.2003); *Castano,* 234 F.3d at 113.

The probation office, in its pre-sentence report, asserted that Flores was not entitled to a minor role reduction because he had knowledge of the full nature and scope of the charged enterprise. This suggestion—that knowledge of the enterprise's nature and scope is a sufficient condition for denying a minor role reduction—is incorrect. The Guidelines define a "minimal" participant, deserving of a 4–point reduction, as a defendant with a "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." USSG § 3B1.2, note 4. But "minor" role reductions, which provide only a 2–point reduction, are not so limited. Indeed, a "minor" participant is defined as anyone "who is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2, note 5. Because knowledge of the enterprise is the only requirement unique to the "minimal" role reduction, it is clear that, by definition, "minor" role reductions are available to defendants whose knowledge of the enterprise makes them ineligible for "minimal" role reductions, but whose relatively minor participation makes them "substantially less culpable" than both the other members of the enterprise and the average

offender in such a crime. It may be that, in some cases, a defendant's knowledge demonstrates culpability, and that such culpability will preclude a minor role adjustment. This will be especially true where knowledge of the enterprise, and intent to join, are elements of the charged offense. *Cf. Castano,* 234 F.3d at 113. But a decision to deny a minor role reduction, based *solely* on a defendant's knowledge of the nature and scope of the offense, and not on the culpability created by such knowledge, would rest on an erroneous interpretation of USSG § 3B1.2.

■ Fortunately, despite the probation office's assertion, no such error was committed in this case.[1] The district court determined that Flores' role in the offense was sufficiently significant to preclude a minor role reduction, not because he knew the full scope of this enterprise, but because his help was a significant element in the venture's success. As the district court held, Flores "was a little something more than a mule.... Within the context of the offense charged ... I find that that was significant enough so as not to warrant 'minor participant' treatment...." These factual findings were, independent of Flores' knowledge (or lack thereof), clearly sufficient to deny the minor role reduction. *See, e.g., Brunshtein,* 344 F.3d at 102; *United States v. Martin,* 78 F.3d 808, 814 (2d Cir.1996). Indeed, although Flores did not join the conspiracy until November 14, 2004, he promptly demonstrated that he was willing to play any role to further its criminal objectives: he helped to disassemble the car traps that concealed the drugs; he helped to move the 27 kilograms of cocaine to a secure location (specifically, the basement of 11

Soulard Street); he acted as a driver for another co-conspirator; and he wired money at the request of another confederate. Neither Flores' eagerness to assume multiple roles to assist the conspiracy nor his co-conspirators' willingness to trust him with drugs and money suggests a minor participant.

Because the district court's factual findings were not clear error, and because, on these facts, Flores's role in the offense was not "minor," the district court's denial of the minor role reduction is AFFIRMED.

---

1. Although the probation officer's mistake did not lead to an erroneous sentence in this case, we are nonetheless concerned that problems might arise if future pre-sentence reports present district courts with similarly incorrect interpretations of the Guidelines' mitigating role adjustment provisions. We therefore encourage the United States Attorney's office to bring this error to the attention of the Probation Department.